UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARENCE DEVINE,

    Plaintiff,

v.                                    Case No. 8:20-cv-349-T-33AEP

RIPA & ASSOCIATES, LLC,

    Defendant.
_____/

**ORDER**

    This matter comes before the Court pursuant to Defendant Ripa & Associates, LLC's Motion for Summary Judgment (Doc. # 34), filed on September 15, 2020. Plaintiff Clarence Devine responded on October 16, 2020. (Doc. # 39). For the reasons that follow, the Motion is denied.

**I.  Background**

    Devine was hired by Ripa as a laborer in February 2019. (Doc. # 34-1 at 49). He left Ripa in mid-December 2019. (Id. at Pl. Depo. 15:8-15:11).

    Devine was paid on an hourly basis. (Id. at Pl. Depo. 34:20-34:21). He started at $12 an hour and received a raise to $13.50 an hour in September 2019. (Id. at Pl. Depo. 36:11-36:25). At the outset of his employment, Devine received

1

Ripa's handbook. (Id. at Pl. Depo. 22:10-24:1; 49-50). The

Handbook states that:

> All required deductions, such as for Federal taxes,
> Social Security, etc., and all authorized voluntary
> deductions, such as Health Insurance contributions,
> will be withheld automatically from paychecks.

(Doc. # 34-2 at 2, 10).

According to Ripa's Chief Financial Officer, Joe Pitre,

Ripa "kept time and payroll records for [Devine] which show

the amount of hours worked in each workweek as well as the

pay for such work, including overtime pay at the rate of time

and a half of [Devine's] regular rate." (Id. at 2-3, 12-36).

Devine's paystubs show that taxes were withheld from his pay.

(Id. at 3, 12-13). Additionally, Devine admits that he was

paid overtime in some weeks. (Doc. # 34-1 at Pl. Depo. 61:23-

62:4).

Pitre averred that "Ripa made significant efforts to

ensure its employees were paid correctly." (Doc. # 34-2 at

3). Each of Ripa's supervisors used "an electronic method to

enter and record each employee's hours worked on a daily

basis." (Id.). Billy Maness supervised Devine. (Doc. # 34-1

at Pl. Depo. 34:15-34:19). Sandra Schmidt, who worked with

him and was Maness's significant other, had a notebook and a

company-issued tablet in which she recorded the hours worked

by Devine on a daily basis. (Id. at Pl. Depo. 57:21-58:18; 74:5-74:16). According to Devine, the hours in the notebook and the tablet were the same. (Id. at Pl. Depo. 80:6-80:8).

As a laborer, Devine performed duties as a general laborer, tail man, pipe layer, and skid steer operator on a construction crew. (Id. at Pl. Depo. 25:14-26:1). Each of these positions required him to work on a team with other employees. (Id. at Pl. Depo. 25:19-30:4). He also admitted that co-workers with the same work schedule drove him to work, with the exception of a period of one month when his mother drove him. (Id. at Pl. Depo. 31:5-34:14).

On approximately five occasions, Plaintiff was asked by another supervisor, Mr. Temple, to leave his normal work crew and work on a different job site. (Id. at Pl. Depo. 39:7-40:18). At the end of those workdays, Devine was brought back to his crew and, at least once, he carpooled with a co-worker to drive home. (Id. at Pl. Depo. 43:11-43:25).

Devine contends that for two of the days he worked with Temple, he was "shorted" two hours because Maness only recorded Devine as working the same number of hours that the rest of the crew worked. (Id. at Pl. Depo. 44:4-44:10). Yet, Devine has no idea what two days he was shorted. (Id. at Pl. Depo. 40:19-41:8).

Devine testified that he told Temple when this happened, and that Temple agreed to fix it. (Id. at Pl. Depo. 45:19-45:25). Devine stated that he does not "know if he ever fixed it or not," but also testified that Temple "never corrected it." (Id.).

Devine initially testified that his pay was simply calculated by multiplying his hourly rate by the hours worked and that taxes were not deducted, which made the calculation simple. (Id. at Pl. Depo. 46:9-50:3). He testified: "I wasn't getting taxes to it, my taxes. They wasn't taking taxes out of my check at all. I don't know why. I don't know why if I put something — I don't [know] what it was, but I wasn't getting taxes taken out." (Id. at Pl. Depo. 49:9-49:12). He continued: "if I'm getting $12 an hour times and I add times 48 and they add up to what I get on my paycheck — I mean, my paycheck didn't add up to that, that means Mr. Temple didn't correct it." (Id. at Pl. Depo. 49:14-49:17). Yet, the undisputed pay records establish that taxes were deducted from Devine's paycheck. (Doc. # 34-2 at 3, 12-13).

Devine also claims that he was at times not compensated for the hours Schmidt recorded. (Doc. # 34-1 at Pl. Depo. 76:13-76:17). According to Devine, when he would check the tablet in which his hours were recorded, he would point out

4

to Schmidt when the recorded number of hours was wrong. (Id. at Pl. Depo. 75:10-24). In response, Schmidt would say "Everybody makes mistakes" or "I'll fix it" but "it was never getting corrected at the end of the day." (Id. at Pl. Depo. 75:25-76:3).

Devine seemed to base his contention that Schmidt never corrected his hours on the fact that the number of recorded hours multiplied by his hourly rate did not amount to the net amount he received on his pay card. (Id. at Pl. Depo. 76:5-17; 84:16-84:24). Specifically, Devine testified "I didn't write it down, but I will go - like when we look at the tablet or notebook, I will go, and we'll add hours up that I'm looking at, we'll add it up. And, like I said, I wasn't getting taxes took out of my stub, so I know how much." (Id. at Pl. Depo. 84:20-84:24). After being informed that taxes were taken out, Devine then testified that he knew his taxes were taken out of his paycheck but that it "wasn't that much." (Id. at Pl. Depo. 62:17-62:24; 85:4-85:20).

In Devine's declaration, he reiterates that Schmidt incorrectly recorded the number of hours worked. He states that he "and many others on [his] crew, routinely complained that [their] hours were not being recorded properly." (Doc. # 39-2 at 2). "For instance, [they] would routinely work a

5

ten (10) hour shift but then find out [they] were only credited for eight (8) hours of work." (Id.). "[They] were told that it would be corrected but when [they] would receive [their] pay, it was clear that [they] were not receiving [their] full hours because the paychecks were not adding up to what [they] believed [they] were owed." (Id.). Similarly, another former Ripa employee, Clevant Davis, averred that he and Devine "routinely complained that [their] hours were not being recorded properly" and that, although they were told it would be corrected, it usually was not, resulting in a lower paycheck than expected. (Doc. # 39-5 at 2).

Devine is unable to point to any specific workweek during which he was allegedly not paid properly for all overtime hours worked. (Doc. # 34-1 at Pl. Depo. 63:4-63:11; 102:1-102:14). He admits that he does not have any documentation showing on which days he allegedly was not properly paid. (Id. at Pl. Depo. 102:1-102:17). He did not take any notes of the hours he worked. (Id. at Pl. Depo. 73:20-74:2). Generally, Devine could not remember any specific number of hours worked in any week and agrees that his hours fluctuated. (Id. at Pl. Depo. 64:7-64:11). But Devine testified that he recalls one week where he worked 56 hours but was only paid for 42 hours. (Id. at Pl. Depo. 73:14-19). The pay records reflect that

Devine was not paid for working 56 hours for any week. (Doc. # 39-4).

Devine admitted during his deposition that, contrary to the allegations in the complaint, he did not routinely work 10-hour days Monday through Friday and every other Saturday from 6:45 am until 5:30 am. (Doc. # 34-1 at Pl. Depo. 68:10-71:4). Although he was supposed to work 10-hour days Monday through Friday, he sometimes worked more than that, and sometimes less. (Id. at Pl. Depo. 108:1-18). He also admitted that his verified interrogatory answers are incorrect because he in fact did not work overtime hours in every week during his employment. (Id. at Ex. A, Pl. Depo. 71:5-73:13).

Devine initiated this case on February 13, 2020, against Ripa, asserting a claim for unpaid overtime under the Fair Labor Standards Act (FLSA). (Doc. # 1). The Court entered its fast-track Scheduling Order on March 31, 2020. (Doc. # 9). The parties mediated on May 19, 2020, but reached an impasse. (Doc. # 21). The Court subsequently entered its Case Management and Scheduling Order on May 27, 2020, and the case proceeded through discovery. (Doc. # 24).

Ripa now seeks summary judgment on Devine's claim. (Doc. # 34). Devine has responded (Doc. # 39), and the Motion is ripe for review.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

To succeed on his FLSA claim, Devine "must demonstrate that (1) he [] worked overtime without compensation and (2) [Ripa] knew or should have known of the overtime work." Allen

9

v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1314-15 (11th Cir. 2007). Devine "bears the burden of proving [his] claim that [he] performed unpaid overtime work." Straley v. Ferrellgas, Inc., No. 8:08-cv-2460-T-26MAP, 2009 WL 10670500, at *2 (M.D. Fla. Sept. 16, 2009).

"Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'" Allen, 495 F.3d at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." Id. "The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and '[e]mployees seldom keep such records themselves.'" Id. (quoting Anderson, 328 U.S. at 687).

"Where the employer has records of time, the employee must come forward with sufficient evidence to call such records into question." Id. "This is especially true where the employer has kept records that reflect overtime hours." Id. Nevertheless, the payment of some overtime hours does not

preclude a plaintiff from succeeding on his claim. See Watts v. Silverton Mortg. Specialists, Inc., 378 F. Supp. 3d 1164, 1175 (N.D. Ga. 2019)("However, the fact that on some occasions Plaintiff reported (or was allowed to report) overtime, and was paid for it, does not defeat her claim that there were other hours that she worked that she was not allowed to report and was not paid for.").

"Summary judgment is warranted in situations where defendants provide detailed time records indicating the times that employees arrive and leave." Hernandez v. Quality Constr. Performance, Inc., No. 1:13-CV-23267-UU, 2014 WL 12531531, at *3 (S.D. Fla. May 6, 2014). "Summary judgment should be denied where the employer's time records reflect the total daily hours worked each day without indicating a specific work schedule or whether there were any breaks in the day." Id. The Eleventh Circuit has explained that, "in situations where the employer's records cannot be trusted and the employee lacks documentation, . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Allen, 495 F.3d at 1316 (11th Cir. 2007)(citation omitted).

Ripa argues that it kept sufficient records of the hours
Devine worked — including some overtime hours — and that he
has not presented evidence to undermine the trustworthiness
of these records. (Doc. # 34 at 9-10). Ripa emphasizes that
Devine did "not take any notes of the hours he worked" and is
"also unable to remember any specific [number] of hours worked
in any week and agrees that his hours fluctuated." (Id. at
10).

But, here, Ripa's records only reflect the total number
of hours Devine worked each day. (Doc. # 34-2 at 15-36). These
records do not state the beginning and end times for each day
and, usually, do not indicate the number or length of breaks
taken. (Id.); see Hernandez, 2014 WL 12531531, at *3 ("Summary
judgment should be denied where the employer's time records
reflect  the  total  daily  hours  worked  each  day  without
indicating a specific work schedule or whether there were any
breaks in the day."); see also Centeno v. I & C Earthmovers
Corp., 970 F. Supp. 2d 1280, 1288 (S.D. Fla. 2013)(finding
defendants' records unreliable because, among other reasons,
the "time sheets [did] not indicate what time the plaintiffs
arrived at work each day, if they took any breaks during the
work day or what time they left work"). Similarly, the records
reflect only rounded numbers of hours worked, such as 10.00

12

or 9.50 hours. (Id.); see Hernandez, 2014 WL 12531531, at *3

("Defendants' time records fall under the latter category and

do not merit summary judgment. . . . Often the total amount

of hours worked is a round 8.0, though this number may also

be 13.5 or 4.0. This round number does not reflect Plaintiff's

actual work schedule and does not indicate whether Plaintiff

took any breaks during the day.").

Furthermore, Devine has presented evidence to call the

accuracy of these records into question. Both he and another

former Ripa employee have declared under penalty of perjury

that Schmidt frequently under-recorded the number of hours

that they worked. (Doc. # 39-2; Doc. # 39-5); see also Brown

v. Gulf Coast Jewish Family Servs., Inc., No. 8:10-cv-1749-

T-27AEP, 2011 WL 3957771, at *6 (M.D. Fla. Aug. 9,

2011)(denying summary judgment where another former employee

provided an affidavit, stating that "Defendant's supervisors

directed her and others to record a lunch break regardless of

whether a lunch break was taken or not"), report and

recommendation adopted, No. 8:10-cv-1749-T-27AEP, 2011 WL

4005928 (M.D. Fla. Sept. 8, 2011). Devine similarly testified

during his deposition that he recalled one week where he

worked 56 hours but was only paid for working 42 hours. (Doc.

# 34-1 at Pl. Depo. 73:14-19). Indeed, the payroll records

13

indicate that Devine was never paid for working 56 hours in a week. (Doc. # 39-4; Doc. # 34-2 at 15-36).

And, while Devine at times stated he did not believe taxes were deducted from his paycheck, he later testified that he was aware that taxes were deducted, and this was not the cause of his belief that he was underpaid. (Doc. # 34-1 at Pl. Depo. 85:4-85:20). To the extent that the credibility of Devine's testimony is an issue, such credibility determinations are the province of the jury. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

The Court is also mindful that "[i]n this circuit, in an FLSA action, an employee need not support their testimony with time records or other documentation." Long v. Alorica, Inc., No. CIV.A. 11-00476-KD-C, 2012 WL 4820493, at *6 (S.D. Ala. Oct. 10, 2012). While Devine lacks documentation to support the number of overtime hours he worked without pay, he can rely on his testimony and his average work schedule to establish the number of overtime hours. See Hernandez, 2014 WL 12531531, at *3 ("As Plaintiff has discredited the accuracy

of Defendants' time records, Plaintiff's affidavit that his average schedule was from 7 A.M. to 7 P.M. each day, Monday through Friday, with one Saturday each month, is sufficient to deny Defendants' Motion."); Brown, 2011 WL 3957771, at *7 ("Although Plaintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work, the Court is satisfied that Plaintiff has produced a just and reasonable inference as to the amount of unpaid work, and that 'any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider.'" (citation omitted)). Devine testified that he worked an average of ten hours per day for five days a week and worked — on average — one Saturday per month as well. (Doc. # 34-1 at Pl. Depo. 108:4-18; 109:4-22). This is sufficient to move forward to trial. See Pascual v. Family Boarding Home, Inc., No. 11-21221-CIV, 2012 WL 2953768, at *6 (S.D. Fla. July 19, 2012)("[W]hile Plaintiffs Pascual and Fernandez were unable to testify to the exact number of hours they worked each week, both Plaintiffs have testified to the number of hours they generally worked each week and the number of overtime hours for those weeks. . . . Thus, although Plaintiffs Pascual and Fernandez are unable to state with precision the number of

uncompensated hours they worked and the days those hours were worked, pursuant to <u>Allen</u>, they are entitled to demonstrate at trial the amount and extent of the unpaid overtime as a 'matter of just and reasonable inference.'").

In short, there is a genuine issue of material fact regarding whether Ripa failed to pay Devine for all overtime hours worked. Thus, the Motion is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Ripa & Associates, LLC's Motion for Summary Judgment (Doc. # 34) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>22nd</u> day of October, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE